UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:13-CR-64-KSF-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION[1] |
| FRED BOUNDS, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court conducted a competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d). Procedurally, the hearing followed Defendant's motion for a competency evaluation (DE #5), to which the United States did not object.[2] The Court, upon making the required findings, ordered a custodial[3] competency evaluation. DE ##11, 13.

The evaluation occurred at the Federal Medical Center in Lexington, Kentucky (FMC Lexington). DE ##12, 13. All parties had access to the resulting forensic report (referenced as

---

[1] The Court issues this order as a Recommended Disposition to preserve the parties' right to a full *de novo* review, if sought, before the District Judge and in recognition that competency may qualify as a dispositive issue. *See, e.g., United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068-69 (9th Cir. 2004) (discussing nature of competency determination as potentially considered dispositive).

[2] At the hearing on Defendant's precipitating motion for evaluation, the United States orally moved to expand the scope of the evaluation to criminal responsibility. The Court granted the motion and extended the evaluation to criminal responsibility. DE #10 (Minute Entry). Defendant filed proper notice pursuant to Federal Rule of Criminal Procedure 12.2(a). DE #9 (Notice).

[3] At Defendant's initial appearance on a Complaint, the Court granted Defendant's motion to continue the issue of detention generally. DE #4 (Minute Entry). Due to the pending detention motion, the Court thus ordered a custodial evaluation and suspended further litigation of Defendant's detention status. DE #11 (Order).

1

the "Report") issued by licensed BOP forensic psychologist Dr. Judith (Betsy) E. Campbell. DE #30 (Forensic Report). In the June 17, 2013 Report, Dr. Campbell opines that Bounds is competent for trial purposes.

The Court promptly set a competency hearing, and the parties appeared with counsel. DE #32 (Minute Entry). At the hearing, Dr. Campbell testified consistently with the findings in her report. Defendant contested the findings in the Report and offered various documents into evidence, including medical records and a psycho-education assessment. Ms. Rebecca Bounds, Defendant's mother, testified in rebuttal. The parties requested and subsequently submitted post-hearing briefing. The issue is ripe for consideration.

## I.     Standard of Review

Section 4241 codifies the competency principles of *Dusky v. United States*, 80 S. Ct. 788 (1960). Thus, to be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *See Dusky*, 80 S. Ct. at 789; *see also* 18 U.S.C. § 4241(a) (phrasing test as whether defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"); *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (applying the "two-prong" competency test from *Dusky*).

Section 4247(d) governs the hearing and assures certain trial-type rights. These include rights of confrontation, cross-examination, and participation. *See* 18 U.S.C. § 4247(d); *see also* 18 U.S.C. § 4241(c) (referencing § 4247(d) for hearing procedure). Whether and precisely how the Rules of Evidence apply in this context is debatable. Section § 4247(d), while discussing

2

hearing procedure, does not specifically reference the Rules, and the Rules of Evidence are not explicit. *See* Fed. R. Evid. 1101 (applying the Rules generally to criminal cases and proceedings but, in part, excepting "the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility" and certain exemplar "miscellaneous proceedings" such as preliminary examinations). A hearing can certainly incorporate trial-type rights without necessitating application of the Rules. *See, e.g.,* 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."). The scant caselaw addressing the issue generally supports application of the Rules in a competency hearing. *See United States v. Weed*, 184 F. Supp. 2d 1166 (N.D. Okla. 2002) (applying the Federal Rules of Evidence to mental competency hearing); *United States v. Zannino*, No. 83-235-N, 1985 WL 2305 (D. Mass. June 5, 1985) (distinguishing mental competency and finding that the Federal Rules of Evidence do not apply to a hearing on physical incapacity). Here, the Court assumes that the Rules do apply but notes that the parties stipulated to the admissibility of all exhibits and did not object to consideration of either witness's testimony.

Ultimately, per Section 4241(d) and based on the required hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of Section 4241(a). This framework **suggests** that the defense bears the burden, although the cases are in disagreement on burden allocation. *Compare United States v. Chapple,* No. 94-5048, 1995 WL 6147, at *2 (6th Cir. Jan. 6, 1995) (table) (burden on United States, though without statutory analysis) and *United States v. Salley*, 246 F. Supp. 2d 970, 976 (N.D. Ill. 2003) (burden on United States) *with United States v.*

*Simmons*, 993 F. Supp. 168, 170 (W.D.N.Y. 1998) ("The burden to prove a lack of competence is on the defendant."). Here, however, the Court need not resolve the issue conceptually because the burden only matters if burden allocation is the deciding factor.[4] *See, e.g.*, *Medina v. California*, 112 S. Ct. 2572, 2579 (1992) (indicating that argument over burden, in competency context, only matters in "narrow class" of cases where proof is "in equipoise"). This is not such a case; the record plainly supports a finding of competency.

## II. Analysis

### A. *Dr. Campbell is appropriately qualified.*

In his post-hearing brief, Bounds curiously argues for the first time that Dr. Campbell's Report and testimony fail the threshold of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S. Ct. 2786 (1993), and its progeny. DE #33 (Memorandum) at 4-8. Per Bounds, Dr. Campbell did not follow the requirements of the Bureau of Prisons's (BOP) Guidelines for Forensic Evaluations when she did not "collect collateral information" or otherwise ignored or was unable to use (based on an alleged lack of qualifications) the collateral information to which she had access. *Id.* at 6. Specifically, he also questions Dr. Campbell's ability to understand and properly apply the relevant effect of alleged anoxic brain injuries. *Id.* at 4. The United States defends Dr. Campbell as a competent and qualified examiner. DE #34 (Response).

The Court finds Dr. Campbell to be an appropriately qualified expert in this matter. The Court appointed Dr. Campbell pursuant to § 4247(b) (which statutorily requires evaluation by a "licensed or certified psychiatrist or psychologist") and based upon the BOP's ultimate site

---

[4] The parties addressed the applicable burden in their post-hearing briefs. Defendant acknowledged that he may bear the burden of proof. DE #33 (Memorandum) at 2. The United States argued that Defendant bears the burden of proving incompetency but also submitted that, to the extent it bears the burden, the record supports a finding of competency. DE #34 (Response) at 2.

4

designation. DE #13 (Order). Dr. Campbell's curriculum vitae appears in the record, and the parties had full access to it prior to the hearing. DE #30-1. She testified that she has conducted forensic evaluations for the BOP since October 2004, estimating that she has conducted between 800 and 900 evaluations to date. Indeed, the Court (and the District) has regularly and repeatedly made competency determinations premised on Dr. Campbell's evaluations.

Defendant first raised any *Daubert* argument in the post-hearing brief; he did not object to Dr. Campbell's qualifications or the validity of her opinions, as a FRE 702 matter, at the hearing. Bounds did properly cross examine Dr. Campbell on her methodology, but the Court rejects the notion that perceived case-specific process criticisms here invalidate Dr. Campbell's overall expertise or role here. *Daubert* may well apply in the competency hearing context. *See United States v. Duhon*, 104 F. Supp. 2d 663, 676-677 (W.D. La. 2000). On this record, however, Dr. Campbell's qualifications are obvious. She holds a Ph.D. and a Masters in counseling psychology from Texas Woman's University, and she has worked for the BOP, in this particular capacity, since 2004. Her continuing education shows consistent and current endeavors. Her opinions regularly guide the District. Bounds may disagree with some specifics of Dr. Campbell's processes here, but the Court finds her testimony admissible under Rule 702. A qualified witness providing testimony helpful to the fact-finder crosses the Rule 702 gate. Here, the statutory evaluation scheme expressly calls for an evaluation by the very type of professional Dr. Campbell is. She testified to gathering and considering all data and information – to include observational, historical, testing, collateral, and interview materials – she deemed necessary to render a valid opinion under the statutory and professional standards.

Further, the Court notes that the BOP documents upon which Bounds relies to challenge Dr. Campbell's process are themselves only guidelines. *See* DE #33-1 (Guidelines for Forensic Evaluations) at 1. The expressed purpose of the BOP guidelines is to "provide recommendations." *Id.* at 4. The Report indicates, and Dr. Campbell confirmed at the hearing, that she did consult medical records provided by Ms. Bounds and Ms. Perlman. Dr. Campbell denied that the Report (and her opinions contained therein) is incomplete without additional medical and/or psychiatric records. She proffered an adequate basis for her opinions, and the Court does not view the tendered BOP guidance as negating Dr. Campbell's studied view.

### B. Bounds is competent to stand trial.

In the testimony and admitted Report, Dr. Campbell thoroughly analyzed Defendant's history, behavior, course of evaluation, and testing performance. Dr. Campbell personally observed Bounds via direct interviews, subjected Bounds to psychological testing, as deemed appropriate, and obtained supplemental information to aid in the evaluation, including legal records and records pertaining to Bounds's medical history. The Report indicates that Bounds "displayed no bizarre behavior, aggression, or behavioral management problems suggestive of mental illness" during the relevant examination period. DE #30 (Report) at 4. Per Dr. Campbell, Defendant functioned "normally" when attending to daily activities, including regular attendance at meals in the dining hall and participation in recreational activities, and he "had no difficulty finding his way around the large institution." *Id.*

The Report opines that Bounds's overall performance in psychological testing suggested "average intellectual abilities" and did not show "cognitive impairment which would interfere with [Defendant's] ability to proceed competently." *Id.* at 5. Dr. Campbell noted that Bounds's

6

"performance suggests his problems [largely tied to historic severe substance abuse] are chronic and require intensive therapy," *id.* at 5, but that the "results of psychological testing and interviews with Mr. Bounds over the course of the evaluation do not support a finding of severe mental illness or mental defect sufficient to preclude his ability to proceed competently." *Id.* at 6. Relative to the court environment, Defendant provided "thorough verbal responses suggesting he understands the various participants and proceedings, is able to understand and discuss the charges against him, and is able to assist his attorney in preparing his defense if he so chooses." *Id.* Dr. Campbell found Bounds to be stable, noting that "although at times he became somewhat argumentative" with her, he "displayed no unusual gestures, mannerisms, or facial expressions, and no bizarre behavior, agitation, disorganization, or confusion suggestive of severe mental illness over the course of the evaluation." *Id.*

The Report, expanded through testimony, is a broad assessment of Defendant's history, condition, and circumstances. Dr. Campbell diagnosed: (1) Alcohol Dependence (controlled environment); (2) Posttraumatic Stress Disorder (PTSD), by history; (3) Major Depressive Disorder, by history; and (4) Personality Disorder not Otherwise Specified, with Antisocial and Borderline Features. *Id.* at 8. Dr. Campbell explained each diagnosis, and she found no impairment sufficient to render Defendant incompetent. Dr. Campbell concluded that Bounds "has not been diagnosed with a mental disorder which significantly impairs his perception of reality and there is no indication his perception or comprehension of his legal situation is presently impaired by mental illness." *Id.* at 9. Dr. Campbell did note that Defendant's "history of chronic substance abuse complicates the diagnostic picture as it is difficult to determine if his presentation is the sequelae of long-term substance abuse or is occurring secondary to ongoing

7

mood disturbance." *Id.* at 8.  But, Dr. Campbell also opined that Bounds "described his legal situation in a rational, non-delusional, and reality-based manner." *Id.* After describing and analyzing Bounds's understanding of the trial process, ability to participate in his defense, and ability to make relevant decisions, Dr. Campbell stated, "In summary, Mr. Bounds displayed a basic, concrete understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney regarding the charges against him should he so choose." *Id.* at 10.

Dr. Campbell correctly applied the *Dusky* standard in determining that Bounds is competent:

> [M]ental status examinations conducted over the course of the evaluation provided no indication of severe mental impairment such [that] it would prevent Mr. Bounds from being able to perform the mental tasks required of a defendant. Based on interactions with him over the course of the evaluation, Mr. Bounds is capable of appreciating the seriousness of his situation, communicating calmly and rationally with his attorney, asserting his preferences regarding how his case will be handled, and, with assistance, engage in planning, problem-solving, and decision-making tasks with his attorney should he so choose.

*Id.* at 7. The Report finally recommends a finding of competency:

> In summary, Mr. Bounds displayed a basic, concrete understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney regarding the charges against him should he so choose. Therefore, based on the available information, in the opinion of the undersigned evaluator, Mr. Bounds is **not** currently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense.  Thus, in the opinion of this examiner, Mr. Bounds **is** currently competent to stand trial.

*Id.* at 10. Consistent with Dr. Campbell's views, expounded testimonially and in the Report, the Court has not independently observed behavior that conflicts with the examiner's conclusions. At no point during the pendency of this action has the Court perceived Bounds as having

8

difficulty in understanding or assisting counsel. In the courtroom, Bounds's manner has been appropriate, and he has been responsive both to the Court and, at least within the courtroom, to counsel.[5]

The crux of Defendant's argument is that Dr. Campbell did not request or consider sufficiently additional collateral records relating to alleged anoxic brain injuries, the result of which Bounds asserts render him incompetent. DE #33 (Memorandum) at 5-7. The Court previously found Dr. Campbell qualified and the Report appropriate under the relevant standards. Ms. Bounds testified as a lay witness in support of Defendant's assertions, primarily describing Defendant's medical history (including alleged anoxic brain injuries) and general observations about Defendant's behavior since the alleged injury. She indicated that, since 2007, her son has experienced memory loss and difficulty with impulse control. Ms. Bounds testified sincerely, and the United States offered nothing to directly undermine her credibility.

Dr. Campbell accepted that Bounds may, at some point, have had brain trauma/injury that negatively impacted and impacts him. DE #30 at 3 ("Records also reflect Mr. Bounds was [*sic*] may have suffered from hypoxia or anoxia on two separate occasions (2005 and 2007) . . . ."). She did not dispute the alleged incidents after being recalled to testify but did not, despite having observed Ms. Bounds's testimony, change her opinion as to Defendant's current competency. Per Dr. Campbell, any diminished intelligence or capacity Bounds suffered as a result of anoxic brain injury does not impair his current competency. The Court acknowledges that Bounds may have suffered from trauma(s) that diminished his IQ and/or resulted in other effects. However,

---

[5] The Court rejected a *pro se* motion concerning trial status, DE #35 (Motion). This motion, while improper as a *pro se* filing, does not show indicia of incompetency. Rather, the motion showed an understanding as to case status, the court role, and Bounds's ability to rationally engage in the litigation process toward a self-protective end.

competency is a snapshot, and Dr. Campbell fully supported her opinions as to Bounds's current intelligence, memory, abilities, communication skills, mental health, and reasoning. A relative loss of mental capacity does not necessarily implicate competency. Dr. Campbell considered the problem appropriately within her overall analysis in assessing Bounds under *Dusky* and § 4241.

Whether Bounds's history might have some type of mitigating effect in responsibility or on any ultimate sentence obviously is beyond the current question.[6] If Defendant seeks funds to secure an expert on such matters, he may apply to the Court by an appropriate motion.

On this record, Dr. Campbell's valid report and testimony require a conclusion of current competency, and the Court recommends that finding.

* * * * *

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Rule 59(b) requires that specific written objections be filed within fourteen (14) days of service of this Recommended Disposition. Failure to object per Rule 59(b) waives a party's right to review.

This the 29th day of October, 2013.

---

[6] Bounds tagged the end of his brief with a request for a medical evaluation. Procedurally and sequentially, this means Defendant would request, presumably, a second but specialized assessment regarding competency based on certain of the particular medical events in Bounds's history as discussed at the hearing. The Court rejects the request as made. The medical events were known throughout the evaluation period, and Defendant did not make this request until post hearing. Dr. Campbell did not view the medical events—which she essentially conceded occurred and had certain effects—as undercutting her competency findings. Thus, there is not a valid basis, on this record, for recommencing evaluation on a new track. Defendant did not present the request by a timely and well-supported motion, and the Court **DENIES** the separate evaluation request embedded in the post-hearing brief.



Signed By:
<u>Robert E. Wier</u>
United States Magistrate Judge